WENDY J. OLSON, Bar No. 7634
wendy.olson@stoel.com
E. ANDERS PEDERESEN, Bar No. 11626
anders.pedersen@stoel.com
STOEL RIVES LLP
101 S. Capitol Boulevard, Suite 1900
Boise, ID  83702
Telephone:  208.389.9000
Facsimile:  208.389.9040

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TERESA SNYDER BORRENPOHL,<br><br>Plaintiff,<br><br>v.<br><br>SHERIFF ROBERT NORRIS, in his individual capacity; BRENT REGAN, in his individual capacity; PAUL JOHN TROUETTE; LEAR ASSET MANAGEMENT, INC.; CHRISTOFER I. BERG; RUSSELL MARCELL DUNNE; JESSE ISAAC JONES; OTHER UNNAMED EMPLOYEES OF LEAR ASSET MANAGEMENT, INC.,<br><br>Defendants. | Case No.  2:26-cv-00301<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

## I.  PARTIES

1.      Plaintiff Teresa Snyder Borrenpohl ("Borrenpohl") is a resident of Post Falls and a citizen of the state of Idaho.

2.      Defendant Sheriff Robert Norris is the Kootenai County Sheriff. He is sued in his individual capacity.

COMPLAINT AND DEMAND FOR JURY TRIAL - 1
152955739.1 0084473-00001

3.     Defendant Brent Regan is an elected Kootenai County precinct committee member and at all relevant times was serving as the chair of the Kootenai County Republican Central Committee. He is sued in his individual capacity.

4.     Defendant Paul John Trouette is the owner and chief executive officer of Defendant LEAR Asset Management, Inc. and one of the men who used excessive force against Ms. Borrenpohl on February 22, 2025.

5.     Defendant LEAR Asset Management, Inc. is a private security contracting firm based in California.

6.     Defendant Christofer Berg is an employee of Lear Asset Management and is one of the men who used excessive force against Ms. Borrenpohl on February 22, 2025.

7.     Defendant Russell Marcell Dunne is an employee of Lear Asset Management and is one of the men who used excessive force against Ms. Borrenpohl on February 22, 2025.

8.     Defendant Jesse Isaac Jones is an employee of Lear Asset Management and is one of the men who used excessive force against Ms. Borrenpohl on February 22, 2025.

## II. JURISDICTION AND VENUE

9.     Jurisdiction over Plaintiff's 42 U.S.C. § 1983 claims is proper under 28 U.S.C. §§ 1331 and 1343. This is an action to enforce civil and constitutional rights pursuant to 42 U.S.C. § 1983 and the United States Constitution.

10.     Venue is appropriate under 28 U.S.C. § 1391 because Defendants Norris and Regan engage in their official duties within this District and the events giving rise to the claims occurred in Idaho. Venue is further appropriate under 28 U.S.C. § 1391 because Defendant Regan lives within this District.

COMPLAINT AND DEMAND FOR JURY TRIAL - 2
152955739.1 0084473-00001

## III.  FACTUAL ALLEGATIONS

**A.     THE KOOTENAI COUNTY REPUBLICAN CENTRAL COMMITTEE PUBLIC TOWN HALL**

11.     On February 22, 2025, Ms. Borrenpohl attended a public legislative town hall at the Coeur d'Alene High School auditorium, located at 5530 N. 4th St., Coeur d'Alene, Idaho 83815.

12.     The Coeur d'Alene High School is situated on land owned and is operated by Coeur d'Alene School District (District #271), which is governed by a Board of Trustees and is operated by a superintendent and such agents and officials acting under the superintendent pursuant to the Coeur d'Alene School District's policies and procedures. *See* Coeur d'Alene School District Policy Manual, § 6100.

13.     Under the Coeur d'Alene School District's policies and procedures, "[t]he buildings and grounds owned, leased, or rented by the [School] District are to be used only for educational purposes or other *public* purposes as approved by the Board [of Trustees] or its authorized representative." *See* Coeur d'Alene School District Policy Manual, § 9505 (emphasis added).

14.     The town hall was organized by the Kootenai County Republican Central Committee. The Kootenai County Republican Central Committee is composed of 74 elected committee persons from each election precinct within Kootenai County.

15.     The event was open to the public. The event was advertised on Facebook. The post stated, "The KCRCC will be holding a Legislative Town Hall on Saturday, February 22nd, 12:30-2:30 PM, at the Coeur d'Alene High School. This is a great opportunity to meet your Idaho State Legislators and get updates on the 2025 Legislative Session." The event also was announced in advance in the Coeur d'Alene Press, the daily newspaper of Coeur d'Alene, Idaho.

COMPLAINT AND DEMAND FOR JURY TRIAL - 3

16.     The facility use agreement completed by the Kootenai County Republican Central Committee describes the event as a "Legislative Town Hall. The event features local and state leaders meeting with the public about what is going on in the Idaho Legislature and Washington, D.C."

17.     No tickets were provided or required for entry, and no effort was made to restrict entry.

18.     There was no sign-up sheet for the event, and no effort was made to document who was present.

19.     As advertised, several elected officials were present on the stage to engage with the audience and participate in the town hall, and an estimated 450 members of the public were in attendance.

20.     Kootenai County Sheriff Robert Norris and elected precinct committee member Brent Regan were present throughout the town hall.

21.     At all relevant times, Mr. Regan was also the elected chair of the Kootenai County Republican Central Committee.

22.     With the knowledge and permission of the Kootenai County Republican Central Committee, LEAR Asset Management was providing security services at the town hall.

23.     On information and belief, Mr. Regan, Officer Norris, and LEAR Asset Management personnel, including Mr. Trouette, discussed or otherwise collaborated together to create a joint plan to remove or silence any individuals expressing views not supportive of the Kootenai County Republican Central Committee, the Republican Party, or the views of the speakers participating in the town hall.

COMPLAINT AND DEMAND FOR JURY TRIAL - 4

24. On information and belief, Mr. Regan possessed a significant amount of control over the plan to eliminate any persons from expressing views not supportive of the speakers participating in the town hall, and those responsible for ensuring that plan was implemented.

25. On information and belief, Mr. Regan knew that LEAR Asset Management personnel would be making unwelcome physical contact with persons who expressed views not supportive of the speakers.

26. Prior to the town hall starting, Sheriff Norris met with individuals from LEAR Asset Management in a stair area adjacent to the stage at about the time the town hall began.

27. Ms. Borrenpohl arrived approximately 20-25 minutes after the event began and took an unoccupied seat in the auditorium.

28. Some attendees were boisterous in response to the statements made during the forum by the elected officials. Some attendees were cheering; others were jeering or expressing disagreement with the legislators' statements.

29. Ms. Borrenpohl, along with many others throughout the auditorium, was among those who spoke out of turn and made loud audible statements critical of positions the legislators on the stage asserted. Although several others in the auditorium stood, pointed, and yelled, Ms. Borrenpohl remained seated while she was speaking.

30. Sheriff Norris knew Ms. Borrenpohl from a prior town hall and from previous public events.

31. Upon information and belief, Sheriff Norris observed Ms. Borrenpohl enter the auditorium after the town hall started.

32. Sheriff Norris approached Ms. Borrenpohl's seat and directed her to leave the auditorium. Ms. Borrenpohl remained seated.

COMPLAINT AND DEMAND FOR JURY TRIAL - 5

33.    Sheriff Norris grabbed Ms. Borrenpohl by her arm and attempted to pull her forcefully out of her seat.

34.    Sheriff Norris asked Ms. Borrenpohl if she wanted to be arrested and threatened to spray her with pepper spray, although there were numerous other people around her who would have been affected by the pepper spray. Sheriff Norris did not ever say to Ms. Borrenpohl what conduct she had engaged in that she could be arrested for.

35.    When he was unsuccessful, Sheriff Norris, acting under color of state law, directed unidentified men dressed in dark pants and black sweaters to remove Ms. Borrenpohl.

36.    Upon information and belief, those men were Defendants Christofer Berg, Russell Dunne, Paul Trouette, and Jesse Jones.

37.    The men did not have any insignias or markings identifying them in any way, either as law enforcement, private security, or meeting attendees.

38.    As directed by Sheriff Norris, two of the men grabbed Ms. Borrenpohl, forcefully pulled her from her seat, and pushed her down onto the aisle floor.

39.    Sheriff Norris used a phone with a camera to film the incident and made no effort to ensure Ms. Borrenpohl's safety, including when Ms. Borrenpohl said that one of the men was assaulting her. He ignored her requests for assistance.

40.    Ms. Borrenpohl repeatedly asked the men who were assaulting her who they were and asked Sheriff Norris if the men were his deputies, but no one immediately responded.

41.    Throughout the time the unidentified men were forcefully removing her from the auditorium, others, on information and belief including Mr. Regan, encouraged the men to continue using force against Ms. Borrenpohl. Mr. Regan also was directing the men's actions. At one point, the emcee said, "she spoke up and now she doesn't want to suffer the consequences."

COMPLAINT AND DEMAND FOR JURY TRIAL - 6
152955739.1 0084473-00001

42. The unidentified men wrestled Ms. Borrenpohl to the ground. The men physically removed Ms. Borrenpohl from the auditorium by dragging her up the aisle, across the back of the seating area, and into the foyer outside of the auditorium where they pinned or held her to the ground.

43. At all times, the men held Ms. Borrenpohl, preventing her from defending herself. When Ms. Borrenpohl was face down in the aisle of the auditorium, she tucked her arms beneath her with her hands in fists near her mouth to keep space between her airway and the floor. Given the number of men and the force being used, Ms. Borrenpohl feared that she would not be able to breathe. When one of the men put his hand near her mouth, she bit the hand, again to ensure that her airway remained clear.

44. Ms. Borrenpohl was fearful for her safety throughout the time the men assaulted her. Because the men were unidentified, because Sheriff Norris directed them to physically remove her, and because of the manner in which they dragged her from the auditorium, Ms. Borrenpohl feared that she was being kidnapped.

45. Sheriff Norris, Paul Trouette, Christofer Berg, Russell Dunne, and Jesse Jones all directly participated in or were integral participants in the physical removal of Ms. Borrenpohl from the auditorium.

46. Upon information and belief, Brent Regan encouraged and/or cooperated with Sheriff Norris and LEAR Asset Management personnel during Ms. Borrenpohl's removal and in the manner she was being removed.

47. Upon further information and belief, Mr. Regan repeatedly communicated with Sheriff Norris and Paul Trouette throughout Ms. Borrenpohl's removal, providing guidance and/or direction.

COMPLAINT AND DEMAND FOR JURY TRIAL - 7

48.     Sheriff Norris caused Ms. Borrenpohl to be cited for misdemeanor battery but the Coeur d'Alene City Prosecuting Attorney declined prosecution.

49.     Sheriff Norris asked the Coeur d'Alene Police Department officers who entered the high school from the parking lot to arrest Ms. Borrenpohl, but they declined to do so.

50.     Coeur d'Alene Police Chief Lee White later explained that Ms. Borrenpohl was exercising her First Amendment rights.

51.     Ms. Borrenpohl suffered pain, scratches, bruising, and emotional distress as a result of Sheriff Norris' actions and the actions of the unidentified men. She sought medical treatment for her injuries. Her clothing was damaged, and she was intentionally and willfully manhandled in a manner that harmed her dignity and reputation, causing her personal humiliation. Ms. Borrenpohl was terrified from the time the unidentified men approached her at Sheriff Norris's direction, and each act of Sheriff Norris, the unidentified men, and Brent Regan and the others in the crowd encouraging their actions increased her fear.

52.     Although other persons in the audience made loud statements during the legislative town hall, no other person was physically grabbed and removed from the auditorium in the same manner prior to the unidentified men dragging her from the auditorium. Nor were any who supported the speakers confronted or asked to leave. Other meeting attendees who attempted to de-escalate the unidentified men assaulting Ms. Borrenpohl also were physically escorted from the auditorium by other unidentified men. At least one had his hands zip-tied, and he was pushed against the wall.

53.     In statements made after the town hall, and even though he had met with them prior to the event beginning, Sheriff Norris said he did not know what security company the men were

COMPLAINT AND DEMAND FOR JURY TRIAL - 8

with, indicating that he knew the men he directed to assault Ms. Borrenpohl were not trained law enforcement officers.

54.     The City of Coeur d'Alene city code prohibits private security companies from conducting any investigation prior to calling the police department. City of Coeur d'Alene police officers were in the Coeur d'Alene High School parking lot at the time Defendants grabbed Ms. Borrenpohl, pulled her from her seat, and pushed her down onto the aisle floor.

55.     On February 24, 2025, the City of Coeur d'Alene issued a letter to Mr. Trouette and LEAR Asset Management setting out various city ordinances that LEAR Asset Management violated during the town hall and ordered Mr. Trouette to immediately and indefinitely suspend all business operations in Coeur d'Alene.

56.     The harm to Ms. Borrenpohl as a result of the defendants' conduct continued well after the town hall. She has continued to suffer emotional injury that required her to take leave from her work and impacted her day-to-day functioning.

## IV.  CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### 42 U.S.C. § 1983 –Fourth Amendment Violation – Probable Cause

### Plaintiff v. Defendants Norris, Trouette, Berg, Dunne, Jones, and LEAR Asset Management

57.     Paragraphs 1 through 56 are realleged and incorporated as if fully set forth herein.

58.     The Fourth Amendment to the United States Constitution protects individuals from unreasonable government searches and seizures.

59.     Prior to taking an individual into custody or making any kind of arrest, law enforcement officers must have probable cause to believe that the person committed a criminal offense.

COMPLAINT AND DEMAND FOR JURY TRIAL - 9

60.     Private actors, acting in concert with or at the direction of government actors, violate an individual's Fourth Amendment rights when they take a person into custody without probable cause.

61.     Defendants Norris, Trouette, Berg, Dunne, Jones, and LEAR Asset Management violated Ms. Borrenpohl's Fourth Amendment right to be free from unreasonable search and seizure when they took her into custody or caused her to be taken into custody on February 22, 2025, without probable cause that she had committed any kind of criminal offense but instead was exercising her First Amendment rights at a public forum.

62.     Defendants Norris, Trouette, Berg, Dunne, Jones, and LEAR Asset Management, through their actions, caused Ms. Borrenpohl physical injury and severe emotional distress.

63.     Defendants Norris, Trouette, Berg, Dunne, Jones, and LEAR Asset Management all directly participated in or were integral participants in the deprivation of Ms. Borrenpohl's Fourth Amendment right not to be taken into custody without probable cause.

**SECOND CLAIM FOR RELIEF**
**42 U.S.C. § 1983 – Fourth Amendment Violation – Excessive Force**

**Plaintiff v. Defendants Norris, Trouette, Berg, Dunne, Jones, LEAR Asset Management, and Regan**

64.     Paragraphs 1 through 63 are realleged and incorporated as if fully set forth herein.

65.     The Fourth Amendment to the United States Constitution protects individuals from unreasonable government searches and seizures.

66.     When taking an individual into custody, persons acting under color of law may not use more force than is necessary or cause the use of more force than is necessary.

67.     Private actors, acting in concert with or at the direction of government actors, violate an individual's Fourth Amendment rights when they use more force than is necessary to

COMPLAINT AND DEMAND FOR JURY TRIAL - 10

take a person into custody, or cause or encourage others to use more force than is necessary to take a person into custody.

68.    Defendants Norris, Trouette, Berg, Dunne, Jones, LEAR Asset Management, and Regan violated Ms. Borrenpohl's Fourth Amendment right to be free from an unreasonable search and seizure or caused the violation of Ms. Borrenpohl's Fourth Amendment right when they forcibly removed her from her seat, or caused her to be forcibly removed from her seat, dragged out of the auditorium, and pinned to the ground at the town hall at Coeur d'Alene High School on February 22, 2025.

69.    Defendants Norris, Trouette, Berg, Dunne, Jones, LEAR Asset Management, and Regan, through their actions and encouragement, caused Ms. Borrenpohl physical injury and severe emotional distress.

70.    Defendants Norris, Trouette, Berg, Dunne, Jones, LEAR Asset Management, and Regan all directly participated in, were integral participants in or caused and encouraged the deprivation of Ms. Borrenpohl's Fourth Amendment right to be free from unreasonable search and seizure.

**THIRD CLAIM FOR RELIEF**
**42 U.S.C. § 1983 – Fourteenth Amendment Violation – Failure to Keep Safe**

**Plaintiff v. Defendant Norris**

71.    Paragraphs 1 through 70 are realleged and incorporated as if fully set forth herein.

72.    The Fourteenth Amendment to the United States Constitution protects individuals from the deprivation of their rights without due process of law, including the right to have government actors protect them from harm when the government actor has placed the individual in danger or created a danger to the individual.

COMPLAINT AND DEMAND FOR JURY TRIAL - 11
152955739.1 0084473-00001

73.     Defendant Norris violated Ms. Borrenpohl's Fourteenth Amendment due process right when he directed unidentified men without law enforcement training to remove Ms. Borrenpohl from the auditorium in which the February 22, 2025, town hall at Coeur d'Alene High School was taking place.

74.     Defendant Norris's conduct placed Ms. Borrenpohl at a higher risk of injury than if defendant Norris had not directed the unidentified men to remove her.

75.     Defendant Norris, through his actions, caused Ms. Borrenpohl physical injury and severe emotional distress.

## FOURTH CLAIM FOR RELIEF
### 42 U.S.C. § 1983 – First Amendment Violation

### Plaintiff v. Defendants Norris and Regan

76.     Paragraphs 1 through 75 are realleged and incorporated as if fully set forth herein.

77.      The First Amendment to the United States Constitution guarantees its citizens the rights to free speech, assembly, association, and petition.

78.     Government action that targets speech based on its content is presumptively unconstitutional. *Reed v. Town of Gilbert*, 576 U.S. 155 (2015). Government action that targets a particular viewpoint is an egregious form of content discrimination. *Id.*

79.     Defendants Norris and Regan violated Ms. Borrenpohl's First Amendment rights when they caused her to be removed from the February 22, 2025, town hall for expressing a viewpoint critical of or in opposition to the government speakers at the town hall.

80.     Defendants Norris and Regan violated Ms. Borrenpohl's First Amendment rights when they caused her to be removed from the February 22, 2025, town hall for expressing a viewpoint critical of or in opposition to the government speakers at the town hall but did not

COMPLAINT AND DEMAND FOR JURY TRIAL - 12
152955739.1 0084473-00001

remove or cause to be removed individuals expressing a viewpoint supportive of the government speakers at the town hall.

81.    Defendants Norris and Regan, through their actions, caused Ms. Borrenpohl physical injury and severe emotional distress.

## V.  ATTORNEY'S FEES

82.    As a result of Defendants' conduct, Ms. Borrenpohl has been required to retain the services of Stoel Rives LLP. Ms. Borrenpohl requests that she be reimbursed for all reasonable attorney's fees and costs as permitted under federal and state law.

## VI.  PRAYER FOR RELIEF

Plaintiff prays for judgment in its favor and against Defendants, as well as:

1.    Compensatory and punitive damages in an amount to be proved at trial;

2.    Attorney's fees, costs, and disbursements incurred herein;

3.    Pre-judgment and post-judgment interest; and

4.    All such other relief as the Court deems just and equitable.

## VII.  DEMAND FOR JURY TRIAL

Plaintiff requests trial by jury of not less than 12 persons as to all issues triable to a jury.

DATED:  May 14, 2026                    STOEL RIVES LLP


/s/ Wendy J. Olson
Wendy J. Olson
E. Anders Pedersen
*Attorneys for Plaintiff*

COMPLAINT AND DEMAND FOR JURY TRIAL - 13
152955739.1 0084473-00001